Keith M. Aurzada (SBN 24009880)
Michael P. Cooley (SBN 24034388)
Bradley J. Purcell (SBN 24063965)
Lindsey L. Robin (SBN 24091422)
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, TX  75201
T:  469.680.4200
F:  469.680.4299

*Counsel for the Thompson Street Defendants*

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § § | Case No. 16-32856-hdh-7<br>Case No. 16-32859-hdh-7<br><br>Jointly Administered Under<br>Case No. 16-32856-hdh-7<br>Chapter 7 |
| Stone Panels, Inc., and<br>Stone Panels Holding Corp., | | |
| Debtors | | |
| Robert Yaquinto, Chapter 7 Trustee,<br><br>(Substituting as) Plaintiff,<br><br>vs.<br><br>The PrivateBank and Trust Company, et al.,<br><br>Defendants. | § § § § § § § § § § § § § | Adv. Proc. No. 16-03143-hdh |

### OBJECTION TO AND MOTION TO STRIKE
### DESIGNATION OF EXPERT WITNESS CHRISTOPHER QUINN

Defendants Thompson Street Capital Partners, Thompson Street Capital Partners L.L.C., and Thompson Street Capital Partners III, L.P. (collectively, the "**Thompson Street Defendants**" or "**Thompson Street**") file this *Objection to and Motion to Strike Designation of Expert Witness Christopher Quinn* (the "**Motion to Strike**") and, in support thereof, would respectfully show the Court as follows:

## I.  PRELIMINARY STATEMENT

1. In this case, the Trustee's[1] fundamental charge is that Thompson Street's acquisition of Stone Panels left both Debtors insolvent, undercapitalized, or otherwise unable to continue as a going concern. In connection with those assertions, the Trustee designated Christopher Quinn ("**Quinn**") as a testifying expert on Stone Panels' solvency. Quinn's expert report and testimony, however, are fatally flawed because they are fundamentally unreliable.

2. Most critically, Quinn must be disqualified from providing testimony in this case because his opinions are entirely based on data he created that is unsupportable. Under Quinn's analysis, when Thompson Street acquired Stone Panels it should have *reasonably* anticipated that the company would have 0% growth for five years and at the end of five years, it would not have been able to refinance its long term debt. Quinn's assumption that Stone Panels would have zero growth for five consecutive years is unsupported by any data. It ignores Stone Panels' **actual** historical growth. It ignores **all** data actually relied upon by Thompson Street and **all** data reasonably available to Thompson Street at the time of the transactions. It relies **only** on his unsupported conclusions and hindsight bias.

3. Indeed, Quinn admits that his projection of 0% growth was:

- Not based on any market research;
- Not based on any projections from Stone Panels;
- Not based on projections from any third-party;
- Not based on any communications from Stone Panels; and
- Not based on interviews with Stone Panels employees.

His projections are based entirely on his *ipse dixit*.

---

[1] In this Motion, "the Trustee" shall mean Robert Yaquinto in his capacity as the Chapter 7 Trustee for Stone Panels, Inc. and Stone Panels Holding Corp. (together, the "**Debtors**").

4.     The Trustee's designation and disclosure of Quinn as an expert in this adversary proceeding should be stricken pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence. The Quinn Report is unreliable because it is not based on reliable data and does not use reliable methodologies. Rather than using readily available data, conducting independent research, or using market data, Quinn invents his own data to match the Trustee's expected outcome and applies the invented data with unreliable methods. Accordingly, the designation and disclosure of Quinn as an expert in this adversary proceeding should be stricken.

## II.     JURISDICTION

5.     This Court has subject-matter jurisdiction and adjudicatory authority to hear and determine this Motion under Rule 702 of the Federal Rules of Evidence.

## III.     Relief Requested

6.     By this Motion to Strike, the Thompson Street Defendants request that this Court enter judgment striking Quinn's testimony as an expert witness.

## IV.     Arguments and Authorities

7.     Quinn's Initial Report and Supplemental Report are based on unreliable data and unreliable methodologies and, thus, should be excluded.

### A.     Quinn's Adequate Capital Test and Cash Flow Test are Unreliable because They are based on Quinn's *Ipse Dixit* and Ignore the Actual Data

8.     Quinn's adequate capital test and cash flow test (the only solvency tests he performed) are based on a "sensitivity analysis" in which he created two five-year financial projections for Stone Panels to determine whether it had sufficient net liquidity and sufficient free cash flow to support Stone Panels' operations. The five-year financial projections Quinn used for his sensitivity analyses assume that for the years 2015 to 2019 Stone Panels would have zero percent (0%) growth in revenue and an EBITDA margin of either ten percent (10%) or fifteen

percent (15%). A reasonable expert *must* consider more than one growth model. It is inconceivable that Quinn purports to have completed his analysis using only a 0% growth model. Furthermore, Quinn's assumption that Stone Panels would have zero growth for five consecutive years is unsupported by **any** data. It ignores **all** data actually relied upon by Thompson Street and **all** data reasonably available to Thompson Street at the time of the transactions. Quinn's scenarios rely **only** on his unsupported conclusions and hindsight bias. As such, Quinn's opinions on solvency must be stricken as unreliable.

9. Quinn's projections are not based (i) Stone Panels' historic performance; (ii) Stone Panels' projections at the time of the transactions; (iii) Thompson Street's projections for Stone Panels at the time of the transactions; (iv) third party projections at the time of the transactions; or (v) market data at the time of the transactions that might indicate reasonable expectations. Instead, Quinn's projections are unsupported conjecture. In reaching his conclusions, Quinn ignores **all** projections that were used by or available to Thompson Street at the time of the transactions.

10. In his initial report, Quinn offers two justifications for ignoring all contemporaneous financial projections for Stone Panels and instead creating scenarios with 0% growth: (i) "one would expect lower revenues during a transitional period given major changes in the Company"; and (ii) the monthly revenue projections were higher than the preceding eighteen (18) months.[2] Neither of these assertions is supportable.

11. First, Quinn provides no support for his assumption that "one would expect lower revenues during a transitional period given major changes in the Company." Quinn cites to no market data, no published materials, no historic metrics, or any other materials that would support such an assertion.

---

[2] Initial Report p. 8 (App._000221).

12. Second, Quinn provides no basis for his assertion that in five years Stone Panels' revenue could not grow beyond the revenue received in the eighteen (18) months before the Transactions. As with his conclusion about the "hostile" acquisition of Stone Panels, Quinn ignores all projections that were used by or available to Thompson Street at the time of the transactions. Quinn's conclusion that Stone Panels' future revenue could not surpass its prior revenue is simply based on his own intuition in hindsight, not evidence or the type of data upon which a reasonable expert could rely.

13. In his Supplemental Report, Quinn tries to bolster the unsubstantiated assumptions in his Initial Report by asserting that (i) after the September Transaction, Stone Panels replaced its vice-president of operations; (ii) Thompson Street created urgent labor problems; (iii) Stone Panels management was highly critical of the new vice-president of operations; (iv) Thompson Street "immediately terminated approximately 1/3 of its thirty (30) skilled employees at its U.S. plant"; (v) "[o]ver the next several months, Thompson Street fired or caused to resign an additional 13 or 14 skilled laborers"; and (vi) the replacement workers were inexperienced, inefficient, and incapable of producing quality products. These assumptions are based on the Declarations of Dewey Winker and Timothy Friedel. Quinn did not speak with Mr. Winker or Friedel or review any documents that would support these conclusory assertions. More importantly, Quinn does not tie any of these assertions to his analysis: Quinn does not indicate if any of these alleged events occurred before the Transactions or were reasonably anticipated at the time of the Transactions, whether or how any of these alleged events would impact Stone Panels' financial performance, and whether or how any of these alleged events would prevent Stone Panels from experiencing **any** growth for a period of five years.

    **B.**    **Quinn's Adequate Capital Test and Cash Flow Test are Unreliable because They are based on Unreliable Methodologies**

14. In addition to using unreliable data, Quinn's expert opinions must be stricken because they are based on unreliable methodologies.

15. In his adequate capital test and cash flow test, Quinn examines Stone Panels' solvency at the end of five years. Quinn did not pick five years because of any relevant caselaw or literature. Rather, Quinn used a five-year timeline because the PrivateBank Note matured in 2019.

16. Even then, under Quinn scenario 2 (using 0% growth and a 15% EBITDA margin), Stone Panels is solvent under both the adequacy of capital test and the cash flow test until 2019, when the PrivateBank Note matures. In his Initial Report, Quinn provides no basis for his assumption that the PrivateBank Note could not be refinanced in 2019. In his Supplemental Report, Quinn opines that "the debt to captital (sic) ratios would be 56% and 44% respectively" and at "those ratios, it is highly unlikely that the Company's debt could be refinanced in part or in whole, resulting in insolvency." Quinn offers no support for his conclusory assertion that the Company could not refinance all or part of its debt based on a debt to capital ratio of 56% to 44%. Indeed, in his deposition, Quinn admits that he *did not look at any market data or speak to any bankers* to determine whether Stone Panels could have reasonably refinanced debt with a 44-56% debt to capital ratio.

17. Thus, Quinn's opinion of insolvency under the adequacy of capital test and the cash flow test is based on the unsupported conclusion that the PrivateBank Note could not have been refinanced. His opinion is, therefore, unreliable.

18. In both his Initial Report and his Supplemental Report, Quinn incorporated errors in his calculations of adequate capital and cash flows that render both opinions unreliable. Thus, in addition to his unreliable data, Quinn's report is based on unreliable calculations and must be stricken.

19. Because Quinn's data and methodology cannot stand on their own, he seeks to bolster them by citing to a metric called the Altman Z score. Quinn's use of the Altman Z score is unreliable and should be stricken. As Quinn admits, the Altman Z score is not a measure of solvency.

20. Further, as Quinn admits, the Transactions did not move Stone Panels' Altman Z score from either the "safe zone" or "grey zone" to the "distressed zone." In an attempt to save his Altman Z analysis, Quinn's Supplemental Report couches his analysis. According to the Supplemental Report, the purpose of the Altman Z analysis is not to determine whether the Transactions rendered the Company insolvent, but to make it "reasonable to conclude that the debt would be the proverbial 'straw that broke the camel's back.'" As with his other opinions, Quinn cannot quantify the impact of the Altman Z score on Stone Panels' solvency and he is forced to rely on his own assumptions and intuition. Because Quinn's Altman Z analysis is not reliable and is irrelevant to the issue of solvency, it should be excluded.

C. **Quinn's Balance Sheet Opinion is Unsupported and Unreliable.**

21. Quinn's "opinions" on the balance sheet test – to the extent they can be called opinions – should be stricken as unfounded and unreliable. Despite proffering a "not conclusive" opinion on balance sheet solvency, Quinn admits during his deposition that he did not even conduct a balance sheet solvency test. Indeed, in his Initial Report Quinn admits that he cannot "refute" the value of Stone Panels' assets – which is necessary to conduct a balance sheet analysis - "[d]ue to time limitations and a lack of relevant information."

**PRAYER**

In light of the foregoing, the Thompson Street Defendants request that this Court grant this *Motion to Strike*, enter an order striking any testimony from Christopher Quinn, and award any

such other and further relief, at law or in equity, to which the Thompson Street Defendants may show themselves to be justly entitled.

Dated: June 7, 2021.                              Respectfully submitted,

By: */s/ Keith M. Aurzada*
Keith M. Aurzada (SBN 24009880)
Michael Cooley (SBN 24034388)
Bradley J. Purcell (SBN 24063965)
Lindsey L. Robin (SBN 24091422)
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
kaurzada@reedsmith.com
mpcooley@reedsmith.com
bpurcell@reedsmith.com
lrobin@reedsmith.com

*Counsel to Thompson Street Capital Partners, Thompson Street Capital Partners L.L.C., and Thompson Street Capital Partners III, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on **June 7, 2021**, a true and correct copy of the above foregoing document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic service in this matter, including counsel for the Plaintiff.

*/s/ Keith M. Aurzada*
Keith M. Aurzada

## CERTIFICATE OF CONFERENCE

I hereby certify that on **June 7, 2021**, counsel for Thompson Street conferred with counsel for the Trustee regarding the Motion. The Trustee is opposed to the above-requested relief.

*/s/ Keith M. Aurzada*
Keith M. Aurzada